UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>TIMOTHY CARVER,<br><br>    Defendant. | 2:21-CR-00082-DCLC-CRW |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Timothy Carver's Renewed Motion for Judgment of Acquittal [Doc. 81]. The Government filed a Response in opposition [Doc. 95]. The Motion is now ripe for disposition. For the reasons stated below, Carver's Renewed Motion for Judgment of Acquittal is **DENIED.**

**I.    BACKGROUND**

On August 10, 2021, a grand jury returned a three-count indictment against Carver, charging him with production (Count One), distribution (Count Two), and possession (Count Three) of child pornography [Doc. 7, pgs. 1-2]. Carver pleaded not guilty by reason of insanity [Doc. 9; Doc. 32, pg. 1; Doc. 88, pg. 18].

The Court conducted a jury trial on April 4, 2023, during which the Government presented uncontroverted evidence that: (1) Carver sent a video file depicting child pornography to an undercover agent from the Federal Bureau of Investigation ("FBI") on November 12, 2020, via the chat messaging app "Telegram" [Doc. 88, pgs. 76, 78, 124-25]; (2) Carver's cell phone contained a video file created on May 23, 2021, depicting child pornography involving a

prepubescent minor [Doc. 88, pgs. 147, 149; Doc. 89, pgs. 3, 5-7]; and (3) Carver's cell phone contained 23 images and 3 videos of child pornography depicting Carver and Carver's then 2-year-old grandson, which were produced between July 2019 and July 2020 [Doc. 89, pgs. 7, 14-20]. At the close of the Government's proof, Carver orally moved for a judgment of acquittal, which the Court denied [Doc. 89, pgs. 81-84].

In support of his insanity defense, Carver presented the expert testimony of neuropsychologist Katie Osborne Spirko, PsyD [Doc. 89, pgs. 101-03], that, at the time of the offense conduct, Carver suffered from a behavioral variant of frontotemporal dementia ("BVFTD") that rendered him "incapable of understanding what he was doing or that it was wrong" [Doc. 90, pg. 60]. Carver renewed his motion for a judgment of acquittal, which the Court took under advisement until after the Government's rebuttal [Doc. 90, pg. 180]. The Government presented rebuttal evidence [*See* Doc. 90, pgs. 181-204], after which the Court overruled Carver's renewed motion [Doc. 91, pgs. 79-80].

The jury returned a verdict of guilty on all three counts [Doc. 73, pgs. 1-2; Doc. 91, pgs. 78-79]. Carver thereafter filed a Renewed Motion for Judgment of Acquittal [Doc. 81; *see* Fed.R.Crim.P. 29(c)(1)], followed by a Supplement after the trial transcripts were filed [Doc. 93]. The Government filed a Response [Doc. 95].

## II.     LEGAL STANDARD

A defendant may move for a judgment of acquittal on any offense for which there is insufficient evidence to sustain a conviction. Fed.R.Crim.P. 29(a). Ordinarily, the Court must determine whether, viewing the evidence and drawing all reasonable inferences therefrom in the prosecution's favor, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Ray*, 803 F.3d 244, 262 (6th Cir. 2015). But in the

context of the insanity defense, the Court must instead determine whether "no reasonable trier of fact could have failed to find the defendant's criminal insanity at the time of the offense established by clear and convincing evidence." *United States v. Taylor*, 483 F. App'x 992, 994 (6th Cir. 2012) (internal quotation marks omitted). Put differently, was the evidence "so one-sided that any decision except a finding of not guilty by reason of mental defect must be cast aside?" *United States v. Waagner*, 319 F.3d 962, 965 (7th Cir. 2003). In undertaking this review, the Court neither weighs the evidence nor judges witness credibility. *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).

### III. ANALYSIS

Carver moves for a judgment of acquittal on the sole ground that Dr. Spirko's expert testimony clearly and convincingly established that he was insane at the time of the offense [Doc. 81, ¶ 7; *see* Doc. 93, ¶¶ 2-9, 15]. The Government responds that the jury reasonably could have rejected Dr. Spirko's BVFTD diagnosis because of her subjective methodology and lack of diagnostic imaging, Carver's appearance and demeanor during trial, and his conduct in his business during the time of the incident offenses, the amount of payment she received for her testimony, and the likelihood that Carver had manipulated the testing procedure [Doc. 95, pg. 7]. The Government argues that the jury could also reasonably have found that Carver was nevertheless able to appreciate the nature and wrongfulness of his conduct because of Carver's admissions, Carver's ability to perform two jobs and maintain a household, the lack of lay witness testimony corroborating Carver's symptoms, and Carver's efforts to hide his offense conduct [Doc. 95, pgs. 7-8].

To succeed on an insanity defense, the defendant must prove by clear and convincing evidence that, at the time of the offense conduct: "(1) he suffered from a severe mental disease or

3

defect, and (2) he was unable to appreciate the nature and quality or the wrongfulness of his acts as a result of that mental disease or defect." *United States v. Black*, 739 F.3d 931, 933 (6th Cir. 2014) (citing 18 U.S.C. § 17).

Initially, it is necessary to understand what BVFTD is. Dr. Spirko testified that BVFTD is a progressive neurodegenerative disease that starts in the orbitofrontal lobe of the brain and first manifests as one of three changes in personality: (1) hyper-aggressiveness; (2) hypersexuality; and (3) disorganized functioning [Doc. 89, pgs. 116, 126-29]. One of its core symptoms is "stimulus boundedness," the inability of the frontal lobe to inhibit automatic responses of the limbic system to stimulation [*See* Doc. 89, pgs. 122, 132]. But the individual is nevertheless able to appreciate the nature and quality of actions he undertook while under stimulation boundedness after-the-fact [Doc. 89, pgs. 135, 157].

The Court begins with Dr. Spirko's testimony. Dr. Spirko formed her opinion, in part, from information obtained from interviewing Carver, his sons, and his long-term partner Matthew Adams and reviewing the Government's interview summaries of Carver's supervisor and coworker from Averitt Express Trucking Company [*See* Doc. 89, pgs. 141, 149, 160; Doc. 90, pg. 34]. Other than observing Carver, the purpose of the interviews was to determine a baseline of Carver's behavior and personality before the offense conduct [*See* Doc. 90, pgs. 37-38, 49, 58, 67, 144-45, 150-51]. But the only source of Carver's pre-offense baseline propensity for pedophilia and child pornography was Carver himself, who the jury could have found incredible given that the evidence showed Carver had lied to the FBI about having Telegram on his phone, molesting his grandson, seeking out child pornography, and quitting child pornography despite having accessed child pornography ten days earlier [Doc. 89, pg. 3; *see also* Gov't. Exh. 6 at 08:00-08:04, 15:40-16:10, 19:26-19:39, 20:19-20:27, 20:56-21:00, 33:27-33:36, 50:35-51:06; Govt' Exh. 8 at

4

19:35-20:10]. The only evidence of compulsive behavior outside of the offense conduct was Adams, who joked on a recorded jail call with Carver about the memory loss BVFTD could cause [Gov. Exh. 19 at 00:21-00:28], discussed the substance of some of his statements to Dr. Spirko [*Id.* at 00:50-01:36], and cautioned against discussing the likelihood of success at trial [*Id.* at 01:48-02:03]. And there was also a conflict between the degree of personality changes described by Carver's sons, Adams, and Carver's coworker and supervisor and those of Carver's boss, his long-time coworker, and his associate at the real estate group [Doc. 90, pgs. 182, 184, 187-90, 193-94]. A rational juror could have discounted the reliability of Dr. Spirko's diagnostic opinion based on the credibility and reliability of the underlying interview data.

The Government's cross-examination also elicited testimony from which the jury could reasonably have doubted the reliability of Dr. Spirko's methodology. In particular, Dr. Spirko testified that some diagnostic criteria have an imaging component, without which BVFTD cannot be diagnosed to a degree beyond "possible" [Doc. 90, pgs. 157, 167-68, 170]. This includes the American Psychology Association's Diagnostic and Statistical Manual of Mental Disorders [Doc. 90, pgs. 168, 170-71]. But Dr. Spirko refrained from neuroimaging tests because "if you find something, it supports the diagnosis; but if you don't, it doesn't refute it; so I think it would be misleading to the jury to present that because it could help him but not really hurt him" [Doc. 90, pg. 158].

Even if the jury accepted that Carver had BVFTD at the time of the offense conduct, the jury reasonably could have found that Carver was nevertheless able to appreciate the nature and quality or wrongness of his actions. Consider Dr. Spirko's description of stimulation boundedness: "you can't not" act on the compulsion [Doc. 89, pg. 135] and cannot consider the social appropriateness of the behavior while under stimulation, "similar to a dog humping someone's

5

leg" [*Id.*, pg. 157]. A rational juror reasonably could have found that description at odds with messages Carver sent the undercover FBI agent suggesting he could control his sexual behavior. Thus, Carver exhibited a degree of inhibition inconsistent with the severity to which Dr. Spirko testified was common with the diagnosis [Doc. 88, pgs. 87-88]. Relatedly, when the FBI agent attempted to set up Carver by asking him to travel to West Virginia to witness child sexual abuse, Carver showed control by declining the invitation [Doc. 88, pgs. 117-18]. Indeed, in contrast to Dr. Spirko's testimony, Carver made various comments suggesting he knew the wrongfulness of his conduct: (1) he asked the undercover agent how he kept the abuse of his stepson from his wife [Doc. 88, pg. 62]; (2) he agreed that photos of child pornography should exclude faces [Doc. 88, pg. 72]; (3) he claimed that "when I share stuff I delete right after" [Doc. 88, pg. 81; *see also* Doc. 88, pg. 75]; (4) he instructed the undercover agent, "just don't show yourself and never show faces" [Doc. 88, pg. 104]; and (5) he advised the undercover agent that "there would be no evidence" if they used a private chat during a video call because "once [yo]u hang up its [sic] not there" [Doc. 88, pg. 103]. And Carver told the FBI he had resisted acting upon requests to take pictures of his grandson [Gov't Exh. 8 at 11:54-12:01].

All told, the evidence was not so one-sided as to preclude a rational juror from reaching any verdict other than not guilty by reason of insanity. A rational juror, faced with the evidence presented at trial, reasonably could have found that Carver failed clearly and convincingly prove insanity.

## IV. CONCLUSION

For the reasons discussed above, Carver's Motion [Doc. 81] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker  
United States District Judge
